The next case is Brandon Steven Motors, LLC v. Landmark, and we'll hear from Mr. Schultz. Good morning, your honors. David Schultz on behalf of Brandon Steven Motors. We are appealing the grant of summary judgment. I suppose since it's cold outside, we can refer to this as a hailstorm case. Before I get to, it's our position that all the policy sections that were relied upon by the parties support our claim. And at the very least, there are many tribal issues of fact that precluded summary judgment. But before I get to the specific call this the Court of Disagreement, oftentimes they focus on the disagreement. I actually think that it's very important, probably fundamental to this case, to discuss what is not in disagreement, what is truly agreed to by the parties are not disputed. And there's three things that I think help frame the court's analysis and our arguments. One is that there is absolutely no dispute that this is a covered loss under Section 3 of the policy. It specifically allows for a claim for damage to vehicles from hailstorm, hail, and windstorm. And so there's absolutely no dispute that that's a covered loss. There's absolutely no dispute that 325 of Brandon Steven Motors vehicles were damaged in the hailstorm. In fact, it's testified to by every witness and there's investigative memos that Landmark even asked for to document that that an event that happened that is specifically covered. And then really what Boyd was talking about from this court was what's the purpose of the policy? What's it for? And it is for this exact covered event. And I'll tell you the reason why I say that. The title is Dealers Open Policy. This is an open lot. It is subject to the wind, the hail, the snow. And I guess the real fact is that because there was a heightened risk of a hailstorm, they charged us an exorbitant premium. It was $1.45 million. And so in Boyd and in Bedivere, the court said, look, the purpose of the policy is to provide the fullest possible protection to the insured, number one. And the premium is what guarantees that right. And so that's I think what's driving this. And then the third thing is, is that all the policy provisions must be interpreted broadly in favor of Brandon Stephen Motors. And all the evidence must be viewed in the light most favorable. And when I looked at one of the policy provisions that was discussed by the parties, it was Section 10. And it deals with a settlement on an appearance basis. And the landmark PMK, Brian Sneed, testified that that applies and allows for a claim to be settled when the parties can agree on what the value is. So based on that interpretation of that part of Paragraph 10, what work does the word appearance lend? So it was exactly what happened in this case. They were looked at and visibly inspected and evaluated on the appearance, on the damage that was occurring. You had both the landmark adjuster and USA Debt looking at every single debt on every single panel on every single car. And they looked at that and then they put into their, and it's set forth in Section 10. And it said, the title is very important. It said the basis for loss and adjustment settlement. And so it provides the way, the mechanism for ways in which the insurance company and the insured can come to an agreement and settle a case, which is what should have happened here. And the point is, is that they applied, everybody applied the same standard under Section 10. You had investigated memos, you had testimony from Durbin, testimony from We applied the 10% labor discount and 25% parts. So I think, as I understand your argument, that your argument is that if you look at Section 9 about the payment of loss, that where you have an agreement as to a certain amount under an appearance damages basis, that you're falling under the option to pay in the first line of that provision. And therefore you are out of the rest of the provision that the insurance company is relying on. That's exactly right. And that was actually conceded by a landmark in footnote two of their motion for summary judgment, where they cited the Rollins versus insurance case. And it said, if the insurance company doesn't repair, doesn't replace, it's got to pay the loss in money. And Section 10 provides the mechanism, spells it out, actually how it was applied by all the parties in this case. Well, what do you do with paragraph 10 that says, if the participating dealer's subcontracts all are part of the repairs to a repair facility in which they or their officers, shareholders or employees have no financial interest, we will make settlement at the cost to the participating dealer. Right. A subcontract requires a contract. And so that would first require that there the insurance company and the insurer to say, you're going to do this work yourself. And if that were the case, then they could subcontract it out. But that was not the case. In fact, and there's a timeline that explains why that's not the case. So I'm going to answer your question. I want to get back to this, why I think there's a Well, I mean, it would be helpful, I suppose, if the contract defined appearance basis damages. True. But we now, but we have an admission by Brian Sneed, who is the landmark 30D6 witness saying what it is. Well, you have a footnote in the district court's opinion saying the parties have agreed that it means when you agree to the amount. But, you know, Can I ask a question about that? Sure. I guess I'm a little confused because I thought Section 9 said that in the event of a partial loss, which is not settled on the appearance damage basis, then you calculate this way. I think you're saying that Mr. Sneed and all the parties did intend to settle this on an appearance damage basis. So doesn't that mean Section 10 does not apply? No, it applies double. What I'm saying is this. There are two provisions. In the event of a partial loss, which is not settled on an appearance damage basis. There are two provisions there. One is the first clause says it may be settled on an appearance basis. And our position is that it applies when the parties can agree on what the value is. So are you talking about payment of loss now? I'm talking, they are in harmony, Your Honor. I'm trying to figure out how they're in harmony. That's the problem. My point is that when you look at Section 10, it says basis of loss settlement and adjustment. And it can be adjusted and settled two ways according to that provision. And paragraph A does not apply to an appearance basis damages claim. But you're arguing paragraph B does. I am arguing that the first section says. When you say section, I mean I'm looking at your policy. Paragraph A. I'm looking directly at capital A. Thank you. And it says in the event of a partial loss to any automobile insured here under which is not settled on an appearance damage basis. I'm going to stop there. Right. It can be settled on an appearance damage basis. And Brian Sneed said that it can be settled on an appearance damage basis when the parties can agree on what the value is. But then the rest of this section doesn't apply. Well, presumably it's settled based on the adjusters. It's an alternative argument. If it's settled, and let me explain. If it's settled on an appearance damage basis, that's the end of the story. It allows the parties to actually agree on what the value is. If Landmark is taking the position that no, we didn't agree, even though there is an enormous amount of tribal issues of fact on that. Then the next section applies. The next section B, paragraph B. And it's section A. It says we will calculate settlement after it says we can settle on an appearance damage basis. If it's not, it says we will calculate settlement as follows. The labor rates will be 90% of participating dealers' customary insurance labor rates. So this isn't your first argument. Your primary argument is that under section 9, the company, at its sole option, elected to pay for the loss in money. It was required to. Well, it had the option. It did. It had the option, three options under paragraph 4. But you're suggesting it chose the option to pay for it in money, it had the adjustment done, it presented it to you, you agreed on it. So paragraph 4 controls, right? They're paying for the loss in money, but that never happened. True. We believe that we're, that's why I started my argument, Your Honor, with the belief that when you are looking at these provisions, and you're looking at it in the broadest possible way to provide the fullest protection to the insured, all of them support our position, because under section 9.4, they had to repair, replace, or pay the loss in money. They did neither. Well, pay for the loss in money begs the question of how much is the loss? Right. And that is defined in paragraph 10, which is entitled Basis of the Loss Settlement. That is, my argument in the briefs was that section 10 provides the mechanism of how you pay the loss in money. And unfortunately, although it excludes where you've settled on an appearance damages basis, it doesn't give us any other information about how one goes about settling on an appearance damage basis. Right. And so, I mean, it seems to me that in the district court opinion, I understood the analysis on appearance damage basis to be, obviously you didn't agree because you're here in court. And, I mean, that's how I understood it. That's how I understood it. But as I understand your claim, what you're saying is that there's an issue of fact of whether they agreed to do appearance damage basis and then they reneged on that agreement. Absolutely, that is our argument. Okay. And looking at pages 50 to 52 of our opening brief, we put out in bullet points the tribal issues of fact that are in existence. And not only is it the June 24th through 26th emails, which was sent the spreadsheet for the express purpose of gaining our insurance agreement. Okay. It was what led up to it. It was two months of them coming to our dealership, investigating, inspecting, taking out iPads to document each individual dent on every panel. After they had amassed all that information, put into standard pricing in their iPads, and then applied the very discounts that Section 10 provided for their benefit, they then gave this 32-column spreadsheet to us to the penny valuing it. And our insured, our client, said it is acceptable. And a jury can look at those facts and conclude that there is at least a tribal issue of fact on whether it was settled on an appearance basis. They can also decide that this should have been paid under the Section 9-4 as a loss, and it should have been paid based on the discounts that were applied. Wouldn't the most likely meaning of appearance basis be exactly the situation where maybe you've got a million dollars of coverage, you have a huge hailstorm, every car in the lot is damaged, and you don't need an adjustment process. You know, based on appearance, we've got a million dollars worth of coverage. Here's your million dollars. Wouldn't that be appearance damage basis as opposed to the adjustment process and the settlement process using various labor rates and discounts, which is what happened here? That could be, but it is also, as Mr. Sneed says, when the parties can agree on the value. And this process agreed on the value to the penny. That was an adjustment process. They didn't agree on the value on appearance basis. They went through the entire process. Both sections, I believe, support our argument. They're both a basis of our claim. And I see I'm in the red, Your Honor. Well, I do want you to- That's all right. That's good. Okay. Thank you. I don't want to go for my time. I know you have five matters to hear. Yeah. Thank you. Okay. I was hoping to spend some time on rebuttal, but I guess I don't. No. Sorry. Thank you, Your Honors. Thank you. We'll hear from the ability. May it please the Court. My name is Wayne Taylor with Moseley, Finlayson & Loggins out of Atlanta, Georgia, and I am here on behalf of Landmark American Insurance Company. And the record is quite clear that there was, number one, never an agreement to settle this claim on an appearance basis. What evidence? I mean, we've got emails saying, this is the amount. Do you agree to it? Yes, the numbers are fine with me. I mean, that sounds to me like an issue of fact of whether there was an agreement. Well, Your Honor, this is an initial estimate that was prepared by the insurance company. This is the way claims are handled at all times. And what's important is it's based on the damages as presented by BSM, Brandon Stephen Motors. And so what you have is a situation where an estimate is created, which is what Landmark is perceiving as its potential maximum exposure in the case. And it's sent it to BSM after it was done to ask them, do you agree with these numbers? It was never an offer to pay. Well, I guess that's an issue of fact. Well, it's not an issue of fact. It was never, I respectfully disagree, Your Honor, because it was never, it was just said, hey, here is this estimate. Do you agree with these numbers? That's all it is. It was never an offer to pay. Well, your position is not that you're entitled to this number on the spreadsheet. Your position is you're not entitled to anything unless you can document the actual cost you spent repairing. That's correct. So the spreadsheet numbers have nothing to do with payment of the actual claim here. Well, let me kind of explain. And I'm going to go back to this issue, which is we have a contract where appearance basis damages is very important, and it's mentioned once with no definition and no explanation of how it works in this contract. To the extent that there's confusion and ambiguity on that falls on you, doesn't it? Well, to the extent there is any ambiguity in the policy, yes, it would be construed against Landmark. But I submit that there is no ambiguity in the policy. And, frankly, the issue of appearance-based damages was, frankly, an extremely minor issue until we got to this appeal. The issue was whether BSM had presented its damages in a measure that was permitted by the policy. And the argument was over whether they had presented, whether there's any evidence presented of the actual cost of repair, which is one of the options available under Section 4 of the policy. But that option, as the district court found, did not find, unfortunately, requires you to request. That's one of your three options. You have to request that they make the repair. Yes, Your Honor. And there's no evidence in the record that that request was ever made, and the district court made no findings about it, but that was the basis of the decision. Well, I respectfully disagree with that, Your Honor, because the district court, Judge Teeter, in fact, did address that issue. And basically she found that BSM had already started and repaired the vehicles and took the opportunity away from Landmark to be able to make the request because it was already being done. They were already making the repairs. Let me interrupt here. Yes. So if I'm the owner of this car dealership and my inventory has all been damaged and we've gone through this process and I think we have an agreement on what you're going to pay me, I need to sell cars. I've got to start repairing them. And it makes perfect sense, if you think that you've agreed on a number, to start repairing them so that you can sell them, doesn't it? Well, they were already going to repair them. When they hired USA Dent, USA Dent was hired for two purposes. They were hired, number one, to assist in the claim presentation process on behalf of BSM. And second, it was hired in order to do the repairs. So the decision by BSM from the outset was it was going to make the repairs, and those repairs started approximately two weeks after the loss occurred because Expert Auto on behalf of Landmark was out there for a two-week period following the loss. And so it was a situation where they didn't have to say, hey, too much time has gone on here. We need to make the repairs. They made that decision right at the outset. So that's not the issue. Why really would that matter? Because as I read Paragraph 9, it says that Landmark has two options. One is for Landmark to go in and repair the vehicles, and then you have the provision about the discount for labor and service, that we're not going to charge or pay a premium for, you know, for BSM to, you know, pay its own staff to participate in the repairs or to pay for the loss in money. And you have never argued in district court or here in your briefs or in argument that Landmark was actually going to go and repair the vehicles. So as a default, you are left with the obligation under Paragraph 10 to pay for the loss in money. And then the whole question is, well, what is the amount of the loss, right? So it really doesn't matter that they went ahead and even if they did prematurely go fix the vehicles, that was not contrary to anything in the contract. Well, it prevented, frankly, Landmark from being able to make the request that they repair the vehicles. Where in Paragraph 9 does it say that you can request it? Well, it's in Paragraph 4, Your Honor. And it says the company at its sole option may pay for the loss in money or may repair or replace the damaged or stolen unit or part thereof. But if requested by the company, the insured shall replace such unit or part thereof or furnish the labor and materials necessary for the repairs. What I'm saying is that BSM took that option, the but if language that, frankly, BSM focused on in its briefing, they took that option away from Landmark because they had already made the decision to repair and they were going to repair and they, in fact, did repair. What is the legal consequence of that? Well, it was not possible for Landmark to make a request for something that BSM was already endeavoring to do. So what is the legal consequence of that? Does that mean that the contract benefit is nullified or does it mean that you still have the remaining obligation to pay for the loss in money? No, it means it excuses Landmark from making the request, but they can insist on provide us the documentation on the actual cost of repair, and that's what we will pay for. Where is that in the agreement that it excuses them from making the request? Well, they prevented us. We had this option. Landmark had this option. Let me ask it this way. Let me ask it this way. At what point, I mean, you're telling us here today this took away your option. I would certainly have thought that the moment that Landmark started, or sorry, the moment that BSM starts repairing all these vehicles, which is very early on, and there's still emails going back and forth, and you're still questioning whether there might be fraud for two, three months. I don't remember seeing any emails saying, oh, what are you doing? Stop. You're taking our right to request that you do this away, and you're now going to have to only get, you're only going to have actual damages, so keep track. You never said that. You just kept proceeding along as though it was all about this total estimate and whether they were entitled to that. At what point did you make the claim that you're stating to us today that this took away your options under the contract? Well, it took away the option to make the request because they were already doing it. At what point did you tell them that? We didn't, but it was no longer necessary to make the request because BSM was already making the repairs. Well, let me interrupt for a minute. If instead you decided we're going to pay, and they'd already been starting making the repairs, there's nothing about them starting on repairs that would interfere with your choice to say we choose the pay option. Well, there would be no sense in doing that. They were already making the repairs. Well, whether you tell them to make the repairs or not, if you had an appearance damages basis agreement, they're still going to repair the cars. It's their inventory. They have to repair them. So I don't see how their repairing the cars means that you can't choose whether we're going to pay or whether we're going to go down this other road. Well, there was a request that they provide information, invoices, et cetera, regarding the cost of the repairs. Yeah, after the fact. Well. When was that? During the fact. It was about two months later, I think. I don't remember the exact date. It's in the briefing. It was approximately there. Why isn't the cost of repair 50% of the spreadsheet estimate? Well, therein lies kind of the issue, Your Honor, because if you talk about that, what BSM is asking for is the $2.3 million figure that is in the spreadsheet. The deal that BSM has with USA Dent is USA Dent, for the cost of the repairs, will receive 50% of that amount, which is $1.15 million. So what does that mean? It means that if Landmark were to pay $2.3 million based on that estimate, $1.15 million would have gone to USA Dent, and then BSM stands to gain a windfall, a profit on a loss of $1.15 million. It's not a windfall. If I'm selling a car that has hail damage and I've done a dent repair as opposed to taking off the door and putting on a new door, I'm willing to bet you can't sell that car for the same price that you could sell it if you'd actually done a full repair, taking off the door and replacing it. That's kind of an interesting point, Your Honor, because we actually conducted discovery on that issue to find out if they were selling the cars for less money because they had already been repaired, and there is nothing in the record and there is nothing in BSM's business records. It's not really your decision. I mean, if I have an insurance policy and I have a dent in my car and they estimate what it is and they pay my claim, I can choose to pocket the money or I can fix my car. I mean, if you have an obligation to pay the claim, you have an obligation to pay the claim. Well, you have an obligation to pay the claim based on what the damages are in the agreement. We agree with that. Pardon? Your whole argument relies on this court essentially agreeing with the district court that there was no reason for you to have to request that they do the repairs and rely on actual costs because they went ahead and did it. We have to agree with that. If we think that you were required to pay for the loss in money because that's the option you appeared to choose, none of this matters. It doesn't make any difference. Well, it does matter. Once you pay for the loss in money, presuming it was the amount that you sent to them and said do you agree to this, if we find there's a fact question and that's what a jury would do, I'm saying what does any of this matter about what the actual costs were? Because Landmark can pay the cost in money based on what the actual cost of the repairs were. So if the actual cost of repairs was only $1 million, then Landmark in money would pay that $1 million, not this $2.3 million estimate. If USAGAN does send BSM an invoice next week that their actual cost is $2 million, BSMUO is $2 million, would you now be obligated contractually to pay $2 million? Because that now is the actual cost. That is what Judge Teeter left open in her order. Well, I think I would want to have an invoice that provided the detail of exactly what was done so that we have an explanation. I wouldn't accept an invoice that just said $2.3 million. If they detailed all of the costs, sort of like what the estimate was. Yeah. In other words, they would have to detail exactly what they did to each vehicle. And that's the problem. That's never been provided. But if it were provided next week, you would be contractually obligated. Well, you know, they filed a breach of contract action, you know, claiming what their damages are. And none of that existed. Because there had been no sustainable damages. But the sustainable damages, the actual costs, you're saying you prevailed because there were no actual costs incurred. But the actual costs could be incurred next week. No, Your Honor. That's not what we're saying. I'm not saying. I know you're not saying that. I'm not saying that. That's what I'm asking. Well, no. Landmark is not saying that there were no actual costs incurred. There may have been. The problem is it's never been documented. Right. And part of proof. Let's document it. So if you've got all these cars and they have all this damage and the people that are repairing it say, you know what, we'll give you a lump sum deal. We'll do them all for a fixed sum. If that's the contract they agreed to, why isn't that enough to say this is your actual cost of repairing those cars? But that wasn't the deal that was between BSM and USA Dent. The agreement they reached is, hey, we'll pay you half of whatever the insurance company pays and we're going to pocket the rest as a profit. And that's contrary to the theory of indemnity, Your Honor. Let's take out the pocketing the profit part. Okay. As I read your briefs, you're saying we don't have to pay them anything. You know, they paid us, you know, almost $1.5 million in premiums, and we all agree it's covered loss. But they lose because they started repairing them, and they can't give us really detailed information about what they paid car by car for these repairs. And I'm saying what they're telling you is they made a deal with this company that said, we think we're going to get this much from the insurance company, and the company said, we'll do it for half of that, and they said deal, and that's what they agreed to. Why isn't that the cost of the repair here? Because it was done the other way around. They entered into the agreement. What difference does it make? They have an agreement, an obligation, to pay a certain amount of money to the people who actually went out and repaired these cars. But it's never been documented. It's documented in an agreement between these two parties that we repaired the cars, and we did it for a lump sum. Your Honor, let me use kind of a personal example, and I realize I'm over time, but let me use kind of a personal example. When somebody takes their car in to get an oil change, they get a very detailed estimate almost down to what kind of oil was used, how much was put in, and all of that. The customer, without getting that kind of detail, isn't going to pay for it, or if you've got maybe more major damages. But if I have a fleet of cars, and they all need oil changes, and the person doing the oil changes says, you know, we've estimated on a detailed basis it would cost this much. I'll give you a deal. I'll do them all for a lump sum of $5,000. Well, then perhaps it was a bad hypothetical on my part because you're talking about uniformity in what's done here. Each vehicle sustained. What difference does it make if they repaired them? We need to know exactly what they did and what that cost, and that's the whole point here is when you bring a breach of contract action, one of the elements you have to prove are your damages, and they didn't prove the damages they sustained. They didn't prove what the cost of the repairs were. They didn't show exactly what repairs were done other than the general, we repaired dents in the cars, and that's why Landmark hasn't paid anything is because it was the failure on BSM to provide appropriate documentation of its damages. Thank you. Thank you very much. Allie, I think you used up your rebuttal, didn't you? Yes. What's that? Okay. Well, presented, thank you, counsel. This matter is submitted.